The next case is number 221462, Admiral Insurance Company et al. v. Tocci Building Corporation et al. At this time, would Attorney Vita please introduce himself on the record if he can? Good morning. May it please the Court, Jeffrey Vita of Sachs, Dornberger & Vita for the Tocci Appellants. May I please reserve two minutes for rebuttal? Yes. This is a duty to defend case. The only issue before this Court and the issue that was before the trial court is whether Admiral owes a duty to defend Tocci in the underlying toll action. The toll action arises out of a large construction project in New Jersey. Tocci was the general contractor on that project. It was a luxury apartment building complex consisting of approximately six buildings and a large garage. Tocci subcontracted all of the work on that project. It did not self-perform any of the work on that project. Toll Residential, the owner, ultimately filed suit against Tocci in New Jersey claiming various construction defects. Admiral, our general liability insurer for Tocci, denied coverage to Tocci and therefore Tocci has been defending itself in that action. In addition, Admiral filed this declaratory judgment action in Massachusetts Federal Court asking for a declaration of no coverage for that toll case. When you apply the fundamental policies that courts are required to apply when interpreting insurance policies, it's clear that Admiral owes Tocci a defense in this case. The toll action alleged a number of items of property damage. In the amended complaint, for example, the complaint indicated that there was soil settlement on one of the buildings which resulted in the concrete slab shifting downward and damaging underground pipe utilities. The underlying complaint also alleged that there was a conduit that was discharging water onto electrical equipment. In addition to the complaint... Could I interrupt you and ask you to look at the business risk exclusion portion of the policy and comment on whether you think it would apply here? The exclusions is a separate section of the policy. The underlying court's decision was based on no occurrence and no property damage under the policy. If Your Honor would like to shift to the exclusions, we can do that. I would. Okay. Which particular business risk exclusion would you like to discuss? Well, if we moved beyond the question of whether property damage was here or whether an occurrence took place, right? Assume the policy applies. Do you see facts here that would support one of the business risk exclusion? Sure. Figuring it. Sure. Assuming the insuring agreement is satisfied, which we believe it is, when you're interpreting an exclusionary section within a policy, the burden shifts completely to the insurance company to show that the exclusion applies completely to any facts alleged and that there's no potential of coverage. So Admiral has claimed that exclusions J-5 and J-6 apply to negate coverage. Those are known as the damage to property exclusions. And when you – there's a couple – again, there's a couple of fundamental insurance principles at play. When you're interpreting the language of an exclusion, the courts in Massachusetts, like many other states, have said squarely, exclusionary language is construed strictly against the insurer because they drafted it. If there's any uncertainty or ambiguity in the language used, it has to be interpreted against the insurance company. So, for example, when Admiral says J-5 applies, when you read the language of J-5, it says, there's no coverage for that particular part of real property on which you or your contractors are performing operations. It's in the present tense. Courts have determined, not necessarily in Massachusetts, but courts have said the particular part J-5 exclusion, it only applies if the property damage occurs at the time that the work is happening. In this particular case, there's no allegation whatsoever that the slab settled, which damaged the pipe, while they were working on the pipe. There was no, the soil apparently was improperly compacted, which then caused the slab to settle onto the pipe. No one was working on the slab or the pipe at the time the soil settled. There's no allegation whatsoever. So when you look at J-5, which says they have to be performing operations, there were no operations on the slab at that time. I was going over some of the other allegations of property damage, which are important when your Honor asks the question, but there are allegations through deposition testimony that a roof leaked, causing damage to interior sheetrock. There are allegations that there was inadequate sheathing, which is an exterior part of the building, which resulted in water getting into the building and damaging the building, creating mold. When that soil settled, which caused the concrete slab to settle, it not only damaged the underground pipe, but it also allegedly damaged the wood framing that sat on top of the concrete. So to your Honor's question, when you say business risk exclusions, J-5 doesn't apply because nobody was performing work on those specific things when that damage happened. J-6 is slightly different, but it's also a limiting exclusion, and it says there's no coverage for that particular part of property that must be repaired or replaced because your work was incorrectly performed on it. There was nothing wrong with the underground pipe when it was damaged. There was nothing wrong with the sheetrock when the water damaged it. The it refers to what? Excuse me? The it refers to what? On it. What is the antecedent for it in that sentence? It says your work was incorrectly performed on it. So the piece of work that needs to be repaired because you, in theory, performed it incorrectly. So the example would be if you improperly compacted the soil, there wouldn't be coverage for that. But if the soil settles, causing damage to? Just read it again because I can't tell if it is your work is the antecedent. It says that particular part of any real property that must be repaired, restored, or replaced because your work was incorrectly performed on it. So the it is the real property? No, the it is the item of whatever you were working on that was defectively performed. So in my example, it would be the soil because it was improperly compacted, or the sheathing, or the roof. Oh, in other words, any part of the real property. Yes. What I was suggesting is there was damage beyond that, beyond the soil, beyond the roof. You have the sheetrock. You have the underground piping and the wood framing, all things that were not being worked on at the time of the damage. Just so I understand the exclusions, that second exclusion is a real property exclusion and the other one is not real property? The J5 is real property. The 6 doesn't, it just says property. Any property? It simply says property. It doesn't say real property. But your idea there is that the damage, the allegations are with respect to the damage. What and how that relates to J6? Just work me through that one more time. Sure. Again, it's Admiral's burden. It's not Tachi's burden. J6 is an exclusion that applies. It's called an operations exclusion or ongoing. The contractor has to still be on site. 6 is also the same time point as 5? 5 and 6 are the same. Is there a separate point beyond that timing point about why there's an ambiguity as to 5 and 6 that helps you? Can you say that again? Is there a separate point besides that timing point as to how to construe 5 and 6 that helps you? I'm not sure I understand the question. You just made a point about the timing, that it's in the present tense. Yes. Is there any other point besides that? In other words, if we didn't agree that it's ambiguous on that score, is there any point that you are making about why 5 and 6 are ambiguous enough that they help you? Right. J6 only excludes the damage to the work that was incorrectly performed. It doesn't exclude the resulting damage to the sheetrock or the piping or the wood framing. So if the roof was improperly installed and it allows water to get in and damage the sheetrock, the roof might be excluded, but the sheetrock wouldn't. So I think that would be an additional reason why J6 doesn't apply. But, again, we have to look at the rules of policy interpretation, and Admiral bears the burden of proof on that. The other point that I think, Your Honor, goes to your question about the business risk exclusions, if you interpret that particular part in J5 or J6 to be the entire project, then you're writing out certain sections of the policy because, number one, you have to apply a strict construction, which means you have to narrowly construe the language, and, number two, if the entire project is TACI's work, then there would never be coverage under the policy for any damage caused by TACI subcontractors, which makes another exclusion, business risk exclusion L, meaningless because that reinstates coverage when the work was performed on your behalf by a subcontractor. So, actually, L has affirmative coverage for a general contractor. So, going backward for a moment, we have an occurrence and property damage. I think your question presupposed that there was an occurrence and property damage. Would Your Honors like to talk about whether there was an occurrence or a property damage? Because that was the basis for the court's holding. An occurrence is defined in the policy as an accident. Only if you have something to add besides what you said in your brief. Excuse me? Only if you have some point that you think would be helpful for us to hear that's not fully covered in the brief. I think we did address it in the brief, but the trial court held that faulty work is not fortuitous. And that is an improper way to interpret whether there's an occurrence or not. The idea is poor workmanship is, the insurance industry has said, And the rationale there is that you are in control of your own work. And if you're more careful, then you would not make a mistake. That rationale doesn't apply when you're a general contractor that subbed out the work to subcontractors. So you didn't actually engage in the means and methods of the work itself. You simply oversaw the work. So that rationale that the trial court applied simply does not apply to whether there's an occurrence or property damage. In the property damage component, it simply requires physical injury to tangible property. There is no requirement in the policy that the property that is damaged has to be outside of the project. There's no requirement whatsoever. And clearly the trial court ruling in that regard was in error. Thank you. So for those reasons, we believe that Admiral owed a defense to Hutchin. Thank you. Thank you, Counsel. At this time, would Attorney Hermanson please introduce himself on the record to begin? Thank you. Your Honors, may it please the Court, I'm Eric Hermanson. I represent Admiral in this case. I think I'll start where my brother left off. The first question in this case, before you get to the exclusions or the carve-outs to the exclusions or the complicated language of the exclusions, the first question in the case is whether the District Court correctly applied to Massachusetts law when she looked to a long, virtually unbroken string of Massachusetts cases that say there is no coverage for a general contractor who voluntarily agrees to perform a contract, underperforms the contract. Was it interpreting this exact language? Yes. Many of the cases are, in fact, interpreting this exact language. Even without any other language in the policy that might have affected it? Yes. The occurrence and property damage language is consistent across most insurance policies that are written in the United States. And the, for example, the Mello case in the Massachusetts Appeals Court, the Lampro case in the Appeals Court, AGM and Friel in the District Court, as well as the case you have before you today, all construed this exact language. This is post-1986 ISO form language. It's used in virtually every commercial general liability policy that's written. And all of those courts are construing the same language and coming out the same way. There are other cases as well. The Donovan case, the Davenport case, the Lampro case, the First Costa case, the Mills case. We cited them in our briefs. If you tally them up, there are more than a dozen different Massachusetts cases. In the Appeals Court, in the U.S. District Courts, and I would argue the Couplet case in the Supreme Judicial Court, all distinguishing, all making the distinction. Your opponents say, am I right, that all of these are unpublished cases? That's not quite true, Your Honor. There are the Lampro case, I believe, is published. The Freel case is published. The AGM case is published. I believe that the Davenport case is published, but no, there is a mix. Do all the cases you're relying from Massachusetts rely on WIDO? No, they do not, sir. Which ones don't rely on WIDO? I would argue that none of these cases rely on WIDO. Some of the cases cite WIDO in passing. WIDO is part of a large body of case law that draws the distinction the District Court drew in this case, between business risks and litigation risks. The taproot case for that in Massachusetts is Couplet. Couplet cites, that's an SJC decision. Couplet cites WIDO. Couplet also cites several other cases, and Couplet cites several treatises for that proposition. WIDO is cited across the landscape because it is part of the body of case law that stands for that proposition, but I would argue that none of these cases rely on WIDO. None of these cases have hitched their wagon to the New Jersey Star and stand or fall if WIDO does.  I guess I'm having, if I look at just the text, is there something about the text that supports your position? So the distinction between business risks and litigation risks is sufficiently fundamental to the purpose of insurance. I think you're saying no. No, I'm saying that I can find multiple spots in the text. I think the first and foremost place in the text is in the definition of occurrence. While CGL policies are written to cover occurrences, which are defined as an accident or continuous or repeated exposure to conditions, and there is a long string of cases that have construed the term accident to exclude voluntarily assumed contractual duties to a counterparty. That's not an accident. That's something that a contracting party signs on for, agrees to, prices into its deal. Judge Woodlock in the Friel case found the same concept embedded in the concept of property damage. A CGL policy will cover property damage or bodily injury caused by an occurrence. Judge Woodlock in the Friel case... There is no accident when the general contractor is sued for a contractually assumed obligation by a contractual counterparty. Correct. There's no accident. So even if the source of the contractual claim is an accident, in the sense, in a colloquial sense, in the sense that an accident occurred in the sense there was negligent behavior by somebody. You're not disputing that. That is one way an accident can occur, yes. You're not disputing it occurred here. I do, Your Honor. I do dispute that. Because in the context of a commercial general liability policy, a contractually assumed liability... Could a tort action be brought against the subcontractor for what happened? A tort action. I don't believe so, Your Honor. I would have to think that through, but I don't believe that there is a tort action pending and I don't believe one could be brought. I believe that what we're dealing with here is a... And just so I understand that, why not? Because it was negligent behavior by the... It was violated, that whether that obligation is violated intentionally, negligently, or with no fault on anyone's part, I believe what you're dealing with is a contractual claim. Pure and simple. I have not heard in Massachusetts of a concept of negligent violation of contract, for example. I don't think that concept enters into a contractual violation here. I haven't thought that all the way through, Your Honor, but I believe that what I'm telling you is Massachusetts law. And it certainly is the way that insurance policies are construed, when they are applied to general contracts. So on your theory, just the natural reading of the word accident, you just don't get in the door to the kind of conduct that's involved here? That is not only my reading, Your Honor, but that is the reading of the long and unbroken string of Massachusetts cases that have construed this language. Judge Woodlock, as I say, also found the same concept in the word property damage. Judge Talwani has found it in the... Could you explain what's the relevance of the exclusion, if you're right? Why are five and six in the contract, if you're right? Thank you for asking that, Your Honor, because there is some confusion. The fact that a particular item appears in an exclusion is not a concession by the insurance carrier that it is covered. It is an acknowledgment of the fact that there may be disagreement among different jurisdictions as to whether something is covered or not. And it's an attempt to doubly protect, to build belts and suspenders in case a carrier finds itself in a jurisdiction, unlike Massachusetts, for example, that would find an occurrence causing property damage within the insuring agreement of the policy. If you're in a jurisdiction like Massachusetts that finds no occurrence triggering policy damage... Then if we just go back to the textual point, just so I follow, that seems to be an acknowledgment that textually it's ambiguous what an accident is. It is an acknowledgment that different courts have come out different ways and that there are jurisdictions that an insurer can find themselves in that have come out different ways on this. Yes. In those jurisdictions, the insurer has built an exclusion... That's not quite what I said. It seems to be an acknowledgment that the word accident, textually, as it appears, is ambiguous. I would disagree with that, Your Honor. I think that the word accident has been construed repeatedly in the Massachusetts cases. You're now shifting not to the text, but to case law, which is a perfectly legitimate thing. The reason why I ask that is, I guess the thinking behind the question is, insofar as we think Massachusetts case law is not clear on the point, we don't have an SJC decision. I would argue you do in complete, sir. But you understand that there's a dispute as to whether that's true, right? Obviously, if it is, we should just have been talking about that case. There's nothing else to talk about, because if there's an SJC decision telling me how to interpret it and it favors you, that's the end of the story. Your Honor, I will make that argument if you'd like me to. Okay. But to the extent that there's a dispute about that, then there's the dispute between you and the parties about the underlying content of the non-SJC case law for Massachusetts courts. Then that raises the question, well, what do we do when Massachusetts law is not clear? One thing we do is we ask them, what do you mean by it? What do you think it means? But we don't do that if it's either easy to prophesize what they're going to do based on where the case law is, or alternatively, if the language is just so clearly in your favor that there's no way you could read it the other way. That's why I was focusing on the text, because if the text is clearly in your favor, I don't even care about Massachusetts case law. I can just read it myself. Favors you, it's over. It seems hard to say the text is of that kind in light of the exclusions. Is there a reason that's wrong? Your Honor, I would say that that's incorrect, and I'd say that's incorrect for a couple of reasons. The first reason is that the text of this or any other contract has to be read against the contractual purpose. And the purpose of the ISO form insuring agreement has been defined and repeatedly defined. I would argue in the Kaplett case, if Your Honor disagrees with that, I am happy to point you to a half dozen appeals court cases and another handful of very well-reasoned federal district court cases that have all defined it. The purpose of an ISO CTL policy to exclude the kinds of liabilities we're dealing with here. All of those cases point in one direction, Your Honor. There is virtual unanimity among the case law in Massachusetts. This issue is settled, and there is nothing that my colleague has been able to point to that suggests that Massachusetts would follow New Jersey or Florida down the alternate path that they would like to go to. There are many ways, Your Honor, many tools that one can use in interpreting a contract. One of them is to see how the language of the contract has been construed repeatedly and consistently by courts within a jurisdiction. And I would argue that the term accident in the context of a CTL policy has been constructed. I take all those points. I still don't think you're answering my question, which is that putting aside what Massachusetts law is, to the extent I think it's ambiguous, not saying I do. To the extent I do, you still win if the text clearly supports it. So it's hard to see how an argument that what we're positing for the purpose of the question is ambiguous Massachusetts case law can demonstrate that the text is clear. So now if we're just looking at the text, the simple question is how could that text in and of itself be clear given the exclusion? Is there some way of reading the two just as words that suggest nothing in the exclusion calls into doubt your view of what accident means as a textual matter? I believe what accident means as a textual matter is clear. It involves a fortuitous event, a liability that occurs fortuitously without the foresight of the parties. Is it the case that the exclusion is doing no work beyond being a redundancy, which you say would make sense to include because it's good to have redundancies that help you hammer home a point? I believe the redundancy point is our principal point. I would also direct you to the Bond Brothers case and similar cases in Massachusetts that say that an exclusion cannot give meaning to an insuring agreement. But there's no way, I guess, simple point is in fact the exclusion is in the simple sense redundant in the sense that if you're right about what the text means as to accident, you'll never get to the exclusion. I agree that's correct. And I believe that's where the district court came out as well. Because she found there was no occurrence caused by property damage, causing property damage within the meaning of the Massachusetts case law, she found that there was no need to reach the exclusions. And she didn't. If Your Honors were to disagree with her on that threshold point, and I find it hard to see how that could happen in light of the Massachusetts case law and this diversity case. But if Your Honors were to disagree with the district court on that threshold point, we would find ourselves in the world of the exclusions. And we've laid out in our briefs the three exclusions we think apply. And do you have an answer to the timing point as to why there's an ambiguity as to the exclusion? Yes, Your Honor, I do. And again, I'm going to begin with the Massachusetts case law because we are not writing on a clean slate here. The Massachusetts case law, beginning with the SJC's decision in JetLine and going through a number of other cases we've cited in our briefs, but particularly JetLine, an SJC decision, makes clear that when construing the business risk language, that particular part of property on which an insured is conducting operations, when construing that language in the context of a general contractor who subcontracted out pieces of the work, the general contractor, that particular part means the entire project, all of the subcontractors' work together. If you have a subcontractor affecting another subcontractor, it's still within the exclusion as to the general. Thank you. Thank you, Your Honor. We would urge your permits. Thank you. At this time, would Attorney Vita please reintroduce himself on the record to his rebuttal? Thank you, Jeffrey Vita, for the TACI appellants. Let me first address the occurrence issue because that does seem that there's some confusion here. As I was saying before, and it's not well settled, as opposing counsel said it is settled, it's not well settled. The policy defines occurrence as accident. Accident is not further defined, so we look to the Massachusetts case law. Massachusetts case law says an accident is an unexpected happening without intention. The Supreme Judicial Court has said any injury or damage to the property of the property is an accident. Any damage which ensues from a volitional act is still an accident if the insured does not specifically intend to cause the resulting harm. Fontaine Brothers quoting Quincy v. Abernathy. I think it's just not answering the point that in the context of a contractual claim, when the breach is a function of some negligent conduct, it just can't be an accident, so cases that aren't involving that context, that don't generally describe what an accident, don't help you. That's your opponent's position. What's your response to that? Well, because neither TACI nor any of the subcontractors intended to cause any of the harm that resulted from the allegedly defective construction. So they were volitional acts. But they all had a contractual relationship to provide work. They all did. But that has nothing to do with whether there was an accident. The Supreme Court has said if you don't intend the result, then it is fortuitous. It is accidental. And then the burden shifts to the insurance company to determine whether or not an exclusion applies. But again, this is a duty to defend case. So all we're talking about is was there an occurrence of property damage during the policy period? If so, then the burden shifts to Admiral to determine whether an exclusion applies. So I think the issue of occurrence has been determined. The case law is not as clear as it could be. And on that point, I want to just pick up on a question, Your Honor, that you had for opposing counsel. Of the cases cited by Admiral, Caplet, Davenport, Mello, and Friel all cite Tweedo. And that older school of thought, which has been overruled in many states. The Jetline case, which opposing counsel relies upon, is a situation where the contractor was hired to clean an underground oil tank. And during the cleaning process, the tank exploded. And the court ultimately determined that the entire tank was the insurance. However, that's your time's up. Going back to the exclusions, if Admiral wanted that particular part to mean the entire project, they could have said that. They didn't.